**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 22-CV-23990-DPG**

**ROYAL ENAMEL LTD.,**

      Plaintiff,

**v.**

**JD E-COMMERCE AMERICA LTD.,** *et al.*,

      Defendants.

_____/

**<u>AMENDED ORDER</u>**[1]

     **THIS CAUSE** comes before the Court on Defendants Jingdong E-Commerce (Trade) Hong Kong Corporation ("Jingdong") and JD E-Commerce America Limited's ("JD") (collectively, "JD Defendants") Motion to Dismiss Plaintiff's Amended Complaint (the "Motion"). [ECF No. 52]. The Court has considered the Motion and the record and is otherwise fully advised. For the reasons that follow, the Motion is **DENIED**.

**BACKGROUND**

     This infringement action concerns a foreign company's use of its online platform to facilitate the sale and shipment of allegedly infringing goods via Walmart's virtual marketplace, Walmart.com. The issue before the Court is whether it has personal jurisdiction over the company based on its maintenance and control of these virtual storefronts, a determination that has not been made by the courts of this Circuit. As the Court treads through these uncharted jurisdictional waters, its analysis is framed by the prophetic guidance handed down by Chief Justice Warren

---

[1] This Order amends the Court's Order denying Defendants' Motion to Dismiss. [ECF No. 128]. The substantive changes from the previous order are on pages 8 n.4, 11-12.

over half a century ago: "[a]s technological progress has increased the flow of commerce between States, the need for jurisdiction has undergone a similar increase." *Hanson v. Denckla*, 357 U.S. 235, 250–51 (1958).

## I.    Parties and Relationships

Plaintiff Royal Enamel ("Plaintiff") creates specially designed clocks that it sells online to consumers worldwide, including in Florida. Plaintiff owns the rights to various marks that are used in connection with the manufacturing and distribution of its clocks.

Defendants Walmart.com USA, LLC and Walmart, Inc. (collectively "Walmart") own and operate the website Walmart.com which is accessible to users nationwide, including those in Florida. Walmart.com is an online marketplace that allows merchants to list their products on the marketplace through the merchants' own virtual storefronts for consumers to view and purchase products. To post products on Walmart.com, merchants, like the JD Defendants, must create an account and apply to do so. Merchants must also agree to adhere to Walmart's policies that mandate several duties, responsibilities, and acts relating to the listing, sale, and shipment of goods posted on Walmart.com.

JD is a Delaware Corporation with its principal place of business in Beijing, and Jingdong is a Hong Kong entity. The JD Defendants applied to join Walmart.com and agreed to be bound by its various terms and policies. The Plaintiff alleges that, via Walmart.com, the JD Defendants are selling and distributing infringing goods. The JD Defendants disagree and allege that they do not manufacture or ship any of the goods that are at issue in this case. Rather, the JD Defendants claim that they are only intermediaries that own and operate "marketplaces" hosted on Walmart.com through which smaller China-based third-party retailers ("Third-Party Retailers") may list their goods on Walmart.com. [ECF No. 53 ¶ 10].

2

These Third-Party Retailers do not contract directly with Walmart.com; instead, they have "Chinese language agreements" with the JD Defendants to list their products on Walmart.com via the JD Defendants' platform. [ECF No. 94 ¶ 15]. According to those agreements and the deposition testimony of Iris Kwok, the JD Defendants' corporate representative, a Third-Party Retailer's listing can only be published onto Walmart.com via the JD Defendants' platform. [ECF Nos. 94 ¶ 23; 97-7]. In effect, the JD Defendants operate as middlemen between the Third-Party Retailers and Walmart.com. Consumers in Florida can access and make purchases from listings hosted by the JD Defendants' marketplaces on Walmart.com. The JD Defendants claim they do not have their own website that is "readily accessible" to users in the U.S. [ECF Nos. 42 ¶ 20; 53 ¶ 10]; *but see* JD.com, Inc., https://corporate.jd.com/home (last visited Dec. 5, 2024) ("Authentic Products Delivered Today"); JD.com, Inc., https://www.jd.com/?country=USA (last visited Dec. 5, 2024).

Although the JD Defendants facilitate the listing of products on Walmart.com, the JD Defendants assert that they do not manufacture or ship any of the goods posted online. However, because of the website template Walmart.com uses for its online listings, the JD Defendants' marketplaces on Walmart.com note that the listed products are "sold and shipped by . . . JD E-Commerce America Limited." [ECF No. 53 ¶ 11]. According to Duo Wang, legal counsel for JD.com (parent company and affiliate of the JD Defendants), the JD Defendants do not have control over this designation. In her declaration (the "Wang Declaration"), she asserts that the JD Defendants' listings provide an "About Seller" link to a page which notes that the JD Defendants operate an "online marketplace platform that facilitates sales . . . of products between third-party sellers and their customers through Walmart.com." [ECF No. 53 ¶ 11 (emphasis added)]. On these bases, the JD Defendants deny being "sellers" of products in Florida.

## II.        Procedural History

On December 8, 2022, the Plaintiff filed its complaint against JD, Jingdong, Walmart Inc., and Walmart.com USA, LLC (collectively, the "Defendants"). JD agreed to waive service but only as to itself and not Jingdong. On January 26, 2023, the Plaintiff moved for an order authorizing service on Jingdong, which this Court granted in part, allowing for service to be effectuated via email and on Jingdong's counsel in another matter. On February 27, 2023, the Plaintiff moved for a preliminary injunction. On February 28, 2023, the JD Defendants moved to dismiss. On March 17, 2023, the Plaintiff filed its Amended Complaint containing six counts against the Defendants for false designation of origin, common law unfair competition, copyright infringement, trademark infringement, as well as contributory copyright and trademark infringement.

On March 30, 2023, the JD Defendants filed the instant Motion. The Motion argues that this Court lacks personal jurisdiction over the JD Defendants and that the alternative service effectuated on Jingdong was improper. In support, the JD Defendants filed the Wang Declaration. On June 18, 2023, Plaintiff filed its Opposition to the Motion along with 46 exhibits, including Walmart's policies and agreements as well as the agreements between the JD Defendants and the Third-Party Retailers. On August 30, 2023, the JD Defendants filed their reply in support of their Motion. On December 27, 2023, the Court held a hearing on the Motion.

## LEGAL STANDARD

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). Complaints must include "properly pleaded facts pertinent to the conduct and activities of the defendant in the forum

4

state[.]" *Borislow v. Canaccord Genuity Grp. Inc.*, No. 14-cv-80134, 2014 WL 12580259, at *4 (S.D. Fla. June 27, 2014) (citing *Elmex Corp. v. Atl. Fed. Sav. & Loan Ass'n of Ft. Lauderdale*, 325 So. 2d 58, 61 (Fla. 4th DCA 1976)) (internal quotation marks omitted). When a defendant submits evidence in support of its challenge to personal jurisdiction, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *United Techs. Corp.*, 556 F.3d at 1274 (quoting *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)) (internal quotation marks omitted). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff," *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (citation omitted), and must "accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

A federal court undertakes a two-step inquiry in determining whether specific personal jurisdiction over a nonresident defendant exists.[2] *Louis Vuitton Malletier*, 736 F.3d at 1350. First, it must determine whether the exercise of jurisdiction is appropriate under Florida's long-arm statute. *Id.* If jurisdiction under Florida's long-arm statute is proper, the court must then consider whether the exercise of jurisdiction would comply with the Due Process mandate of the Fourteenth Amendment. *Id*.

---

[2] The requirements of Florida's long-arm statute are satisfied if the parties can demonstrate that either general or specific jurisdiction exists. *See Dohler S.A. v. Guru*, No. 16-23137-CIV, 2017 WL 4621098, at *3 (S.D. Fla. Oct. 16, 2017). The Plaintiff does not contend that the Court should exercise general personal jurisdiction over the JD Defendants. Therefore, if personal jurisdiction exists in this case, it must be pursuant to specific jurisdiction.

**DISCUSSION**

The Plaintiff claims that the Court has personal jurisdiction over the JD Defendants under Florida's long-arm statute, Fla. Stat. § 48.193(1)(a)(2), and that Due Process principles weigh in favor of exerting personal jurisdiction over them. The Plaintiff's jurisdictional claims rely on the JD Defendants' role in maintaining virtual storefronts on Walmart.com and facilitating the listing, sale, and shipment of products to Florida consumers. In response, the JD Defendants argue that, because they are not the actual manufacturers or shippers of the products nor operators of the Walmart.com website, this Court does not have jurisdiction over them. The Plaintiff counters by arguing that the JD Defendants are sufficiently involved in both the listing of products and their sale to warrant jurisdiction over them. In the alternative, the Plaintiff argues that if the JD Defendants' own direct conduct does not suffice, jurisdiction can be established over them through the conduct of their agents, the Third-Party Retailers. In reply, the JD Defendants argue that an agency relationship has been disclaimed by contract and is forbidden under Chinese law. Jingdong also separately challenges the propriety of service effectuated by Plaintiff.

The Court will first address whether the Plaintiff has met the requirements of Florida's long-arm statute for personal jurisdiction, including whether the Plaintiff's agency theory suffices. The Court will then address whether exercising jurisdiction would comport with Due Process. Lastly, the Court will address Jingdong's challenge to its service of process.

**I.     Florida's Long-Arm Statute**

Florida's long-arm statute, Fla. Stat. § 48.193, provides, in pertinent part:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> . . .

6

2. Committing a tortious act in this state . . . .

Fla. Stat. §§ 48.193(1)(a)(2) (emphasis added).

Under Florida law, a nonresident defendant commits "a tortious act within [Florida]" when he commits an act outside the state that subsequently causes injury within Florida. *Louis Vuitton Malletier*, 736 F.3d at 1353; *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008). In *Louis Vuitton Malletier*, the Eleventh Circuit held that a plaintiff could satisfy the tortious act provision of Florida's long-arm statute based on a defendant's operation of a website accessible to consumers in Florida. *Louis Vuitton Malletier*, 736 F.3d at 1353. The court clarified that unrebutted allegations of "multiple sales into Florida" through a defendant's website are sufficient to support a finding that the defendant's acts "cause[d] injury within Florida" in satisfaction of the long-arm statute's specific personal jurisdiction requirements. *Id.*

A.    JD Defendants' Direct Actions

The Plaintiff argues that it has made an initial showing of personal jurisdiction under Florida's long-arm statute by alleging that (1) the JD Defendants "sold[] and distributed unauthorized copies" of the Plaintiff's products; (2) "[t]he Walmart.com Marketplace website is fully interactive and accessible in Florida;" and (3) the JD Defendants "sold and shipped" counterfeit clocks. [ECF No. 94 at 19]. This is sufficient to meet the Plaintiff's initial burden to establish personal jurisdiction.[3]

The JD Defendants raise two primary arguments to challenge personal jurisdiction based

---

[3] District courts in this circuit are split regarding a plaintiff's initial pleading standard for personal jurisdiction. *Compare 3Lions Publ'g, Inc. v. Interactive Media Corp.*, 389 F. Supp. 3d 1031, 1038 (M.D. Fla. 2019) (holding plaintiff "has sufficiently tracked the language of the long-arm statute to meet the initial pleading standards for personal jurisdiction") *and White v. Discovery Commc'ns, LLC*, 365 So. 3d 379, 382 (Fla. 1st DCA. 2023), *with Oviedo v. Ramirez*, No. 21-CV-23750, 2022 WL 1641865, at *5 (S.D. Fla. May 24, 2022) (declining to adopt standard permitting the tracking of the long-arm statute to establish a prima facie case of jurisdiction) *and In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1142 (S.D. Fla. 2019) (declining to do same).

on Florida's long-arm statute. The JD Defendants argue that the evidence undisputedly shows that (1) they provide a marketplace platform and are not "sellers" of the products at issue, and (2) they do not have control over the listings on Walmart's website. They also argue that Plaintiff was not injured in Florida because Plaintiff is not "based," or have "its own presence," in Florida. [ECF No. 52 at 13–14].

The JD Defendants rely primarily on the Wang Declaration to challenge the Plaintiff's personal jurisdictional allegations.[4] The Court is skeptical as to whether the evidence relied on by the JD Defendants is sufficient to warrant shifting the burden back to Plaintiff. The Wang Declaration is self-serving and conclusory, and many representations made in the affidavit conflict with other evidence. [ECF No. 52 at 6-9; ECF No. 53 ¶ 9 ("Neither Jingdong nor JD sells any products through Walmart.com. In fact, they do not sell any products at all in the United States, through any channel."); *id* ¶ 12 ("When a listing . . . is published on Walmart.com through a Jingdong or JD marketplace platform, it is a third-party seller, not Jingdong or JD, that publishes the listing.")]; *see also Louis Vuitton Malletier*, 736 F.3d at 1354 ("Instead, Mosseri's affidavit contains only a denial that he was not affiliated with the website. Given the extensive allegations in the complaint, it is questionable whether Mosseri's conclusory denial shifted the burden back to the plaintiff at all."); *Posner v. Essex Ins. Co*., 178 F.3d 1209, 1215 (11th Cir. 1999) ("Such statements, although presented in the form of factual declarations, are in substance legal

---

[4] The JD Defendants made other legal challenges in their briefing and during the December 27, 2024 hearing, however, none are supported by the law. For example, they argue that conduct directed nationwide cannot ever meet the purposeful availment standard. This argument fails. *See Licciardello*, 544 F.3d at 1288; *Tobin v. Astra Pharm. Prod., Inc.*, 993 F.2d 528, 544 (6th Cir. 1993) (finding purposeful availment based on the existence of a nationwide distribution agreement); *TracFone Wireless, Inc. v. Clear Choice Connections, Inc*., No. 13-CV-23066, 2014 WL 11899285, at *5 (S.D. Fla. July 15, 2014) (recognizing that nationwide accessibility of a website may support purposeful availment so long as other specific facts of availment are alleged).

conclusions that do not trigger a duty for Plaintiffs to respond with evidence of their own supporting jurisdiction.").

Even if the JD Defendants' evidence were enough to shift the burden back to Plaintiff, the Court finds that the Plaintiff has met its burden of establishing the requirements of Florida's long arm statute. The Plaintiff has shown that the JD Defendants are collectively responsible for the sale of more than thirty million dollars' worth of infringing products to Florida consumers. *See* [ECF Nos. 97-1 at 20; 97-4; 97-7]. The Wang Declaration attempts to overcome that showing by parsing the conduct of the JD Defendants and the Third-Party Retailers. It asserts that the JD Defendants only operate an online marketplace and, as opposed to the Third-Party Retailers, do not directly manufacture or ship products. The Wang Declaration also avers that because the JD Defendants do not control the content of the Walmart.com listings, they do not operate a website that is "readily" accessible to consumers in Florida. [ECF No. 53 ¶ 10]. Relying on these statements, the JD Defendants argue that their limited role in the sale and shipment of infringing goods is insufficient for this Court to exert personal jurisdiction over them. But as previously noted, these statements and argument are conclusory and at odds with evidence submitted by the Plaintiff. As the Court pointed out during the December 27, 2023 hearing, it is not the naming or framing of the transaction that is dispositive for jurisdictional purposes but what the JD Defendants actually did.

The JD Defendants do not dispute that their platform and the Walmart.com marketplace are how the alleged infringing goods are sold and shipped to Florida consumers. Iris Kwok confirmed that the JD Defendants' agreement with Walmart refers to the Third-Party Retailers as the JD Defendants' "sub-sellers." *See* [ECF No. 97-7 at 68:1-7]. The Wang Declaration concedes that the JD Defendants maintain online marketplaces on their platforms which are accessible on

Walmart.com to consumers, including those in Florida. [ECF No. 53 ¶¶ 10, 12]. The Wang Declaration also concedes that the Third-Party Retailers, which allegedly manufacture the infringing goods, use the JD Defendants' platform to reach consumers in Florida. *Id.* Iris Kwok also confirmed that millions of dollars of sales were generated "through [the JD Defendants'] accounts." [ECF No. 97-7 at 8–9]. Based on this record, the JD Defendants' arguments against personal jurisdiction suggests that the Court weigh form over substance. *IP Innovation, L.L.C. v. RealNetworks, Inc.,* 310 F. Supp. 2d 1209, 1214 (W.D. Wash. 2004) ("To exempt S & W from personal jurisdiction because its sales to the forum were made indirectly through a subsidiary established to do tasks that S & W would otherwise have done itself would exalt form over substance despite the Supreme Court's warning against such an approach.").

Furthermore, the Plaintiff has provided several agreements where the JD Defendants agreed to control the sale of goods from their platform, including removing listings at Walmart's request, maintaining a valid U.S. office for product returns, removing the Third-Party Retailers from their platform upon notice by Walmart, and covering the Third-Party Retailers' chargebacks. The JD Defendants do not contest the existence or validity of these agreements or that they are held out to be the sellers and shippers of the products at issue on Walmart.com. The Wang Declaration only notes that this labeling is due to Walmart.com's template and that the JD Defendants do not actually ship the products themselves. Therefore, at most, the issue of whether the JD Defendants are sellers for jurisdictional purposes is a disputed factual matter that must be resolved in favor of the Plaintiff at this stage. *Diulus v. Am. Express Travel Related Servs. Co., Inc.*, 823 F. App'x 843, 848 (11th Cir. 2020) ("[W]here the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff.").

The JD Defendants' argument that they do not own or control the Walmart.com website or its virtual storefronts is conclusory at best. According to the Wang Declaration, the JD Defendants "do not have control over how Walmart.com displays items" and do not "sell[] any products through Walmart.com." [ECF No. 53 ¶ 9]. But, this conclusory statement is contradicted by the very terms of the JD Defendants' agreements with Walmart, whereby the JD Defendants agree to regulate the listings and marketplaces their platform hosts on Walmart.com. [ECF No. 94 ¶¶ 18-22].

Because the Plaintiff has sufficiently established that the JD Defendants maintained and controlled the Walmart.com marketplaces that facilitated the sale of more than thirty million dollars' worth of infringing products to Florida consumers,[5] the Court finds that it has specific personal jurisdiction over the JD Defendants under Florida's long-arm statute. *See CreeLED, Inc. v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A"*, 699 F. Supp. 3d 1357, 1362 (S.D. Fla. 2023) (finding that a plaintiff's allegations that the defendant "directed business activities toward" the state of Florida through "internet-based e-commerce stores and fully interactive commercial internet websites accessible in Florida and operating under Seller IDs" are sufficient for the plaintiff to invoke Florida's long-arm statute).

The JD Defendants also argue that Plaintiff *must* reside within the state to prove injury here, pursuant to Florida's long-arm statute. [ECF No. 52 at 13–14]. This is incorrect. In *Madara*, 916 F.2d at 1515, the Eleventh Circuit found that Florida's long-arm statute applied to a libel action

---

[5] Regardless of whether the JD Defendants exert sufficient control over Walmart.com, Florida courts have held that tortuous conduct in the form of postings made accessible through the website of another can still be sufficient to meet the specific jurisdiction requirement of Florida's long arm statute. *See Estes v. Rodin*, 259 So. 3d 183, 192 (Fla. 3d DCA 2018) (finding defamatory posts on a Facebook group that was accessible to Florida residents was sufficient for specific jurisdiction over the post's author). Therefore, the JD Defendants' argument that jurisdiction cannot be premised on the Walmart.com website because they do not own or control it is unavailing.

by a nonresident plaintiff against a nonresident defendant when the offending material was circulated in Florida. The Eleventh Circuit has not ruled on this issue in the trademark context. *See Lovelady,* 544 F.3d at 1283 ("We need not decide whether trademark injury necessarily occurs where the owner of the mark resides, as the Florida district courts have held, because in this case the alleged infringement clearly also occurred in Florida by virtue of the website's accessibility in Florida."). While there are Southern District of Florida cases that have held that trademark injury occurs where the owner of the trademark resides, *see, e.g.*, *La Potencia, LLC v. Chandler*, No. 22-80417-CIV, 2022 WL 17417232, at *5 (S.D. Fla. Nov. 3, 2022), *report and recommendation adopted*, No. 22-CV-80417-RAR, 2022 WL 17415076 (S.D. Fla. Dec. 5, 2022) (internal citations omitted) (citing cases), this does not mean that injury *only* occurs where the owner of the trademark resides. As such, the Court finds that Plaintiff can still establish specific jurisdiction in this case even if it is not a citizen of Florida.

      B.    <u>Plaintiff's Agency Theory</u>

      Alternatively, the Plaintiff argues that this Court has personal jurisdiction over the JD Defendants due to the control they exert over Walmart.com and the Third-Party Retailers. To support this agency theory, the Plaintiff primarily relies on the "extensive contracts" between the JD Defendants and Walmart as well as "Chinese language agreements" between the JD Defendants and the Third-Party Retailers. [ECF No. 94 ¶ 21]. The critical question is whether these contracts are sufficient to support an agency relationship for jurisdictional purposes.[6]

      "In order to show an agency relationship, the plaintiff must show: (1) acknowledgment by the principal that the agent will act for it; (2) the agent's acceptance of the undertaking; and (3)

---

[6] The JD Defendants' main objection to the Plaintiff's agency theory is that it was not specifically alleged in the Amended Complaint. However, since the JD Defendants assert a factual jurisdictional challenge, the Court is not limited to the allegations in the Amended Complaint.

control by the principal over the actions of the agent." *Sarmiento Lopez v. CMI Leisure Mgmt., Inc.*, 591 F. Supp. 3d 1232, 1238 (S.D. Fla. 2022). Importantly, "express disclaimers of agency do not necessarily eliminate the existence of an agency relationship[.]" *Commodity Futures Trading Comm'n v. Gibraltar Monetary Corp.*, 575 F.3d 1180, 1189 (11th Cir. 2009) (*quoting Carr v. Stillwaters Dev. Co., L.P.*, 83 F. Supp. 2d 1269, 1279 (M.D. Ala. 1999) (internal quotation marks omitted).

Neither the Plaintiff nor the JD Defendants directly address the first two elements. Rather, the JD Defendants argue that their relationships with Walmart.com and the Third-Party Retailers are that of independent contractors and, therefore, cannot be the basis for jurisdiction as agents. [ECF No. 108 at 7-10]. The JD Defendants point to independent contractor provisions in some of their contracts with Third-Party Retailers and request that the Court take judicial notice of the fact that Chinese law requires agency relationships to be in writing.[7] [ECF No. 109]. For support, the JD Defendants rely on *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 628 (11th Cir. 1996).

However, in *Sculptchair,* the Eleventh Circuit acknowledged that personal jurisdiction could be premised on an agency relationship when there was "no evidence that [the defendant] ever directly manufactured, sold, leased, or solicited orders" in Florida. *Id.* In making its determination, the court did not focus on the labels assigned to the parties; rather, it focused on the

---

[7] The JD Defendants also argue that because some of their agreements with Walmart.com include an independent contractor provision stating that "No agency . . . relationship is intended or created by this Agreement," the Plaintiff cannot establish an agency relationship using any of the contracts. The JD Defendants have not provided authority, or even argument, demonstrating the validity or enforceability of these independent contractor clauses for the claims asserted. The Declaration of Qi Zhang, which translates a section of the Chinese civil code, does not cure this deficiency. And although agency disclaimers exist in some contracts, they are contradicted by various other portions of the agreements as well as the representations made on the JD Defendants' listings on Walmart.com. Moreover, the Plaintiff does not solely rely on a single contract to evince an agency relationship. Rather, the Plaintiff relies on a variety of contracts and policies to show that there is an agency relationship between the JD Defendants and Walmart.com and between the JD Defendants and the Third-Party Retailers for the purposes of establishing personal jurisdiction. Whether the "No agency" provision is sufficient to negate all other contractual provisions is a merits determination better left for future resolution.

conduct of the individuals. *Id*. at 628-29; *Gibraltar Monetary Corp*., 575 F.3d at 1189; *Carr v. Stillwaters Dev. Co., L.P.*, 83 F. Supp. 2d 1269, 1280 (M.D. Ala. 1999) ("Thus, even though the agreement denies agency, Insignia contracted to perform services for the benefit of StillWaters Development and subject to StillWaters Development's ongoing control"). *But see Todd Benjamin Int'l*, 2023 WL 4457458, at *13 (holding that agency disclaimer at end of presentation negated agency relationship when jurisdictional evidence presented demonstrated a lack of both actual or apparent agency relationship). The court in *Sculptchair* ultimately declined to find an agency relationship because "[t]here [was] no evidence whatsoever" that the defendant "exercised any meaningful control over the means employed by [agent] to market the product." *Sculptchair, Inc*., 94 F.3d at 628. The same is certainly not true here. Although some of the agreements between the Third-Party Retailers and the JD Defendants had agency disclaimers, the JD Defendants still agreed, through their agreement <u>with Walmart</u>, to control and regulate the listing and sale of products on Walmart.com.

Personal jurisdiction premised on an agency theory can extend to various types of relationships and, therefore, is not limited to parent-subsidiary relationships. *Hard Candy, LLC v. Hard Candy Fitness*, LLC, 106 F. Supp. 3d 1231, 1241 (S.D. Fla. 2015). Rather, courts have focused on the level of "operational control" exerted over the agent in determining whether an agency relationship is sufficient to create jurisdiction over a principal. *Id.* at 246-49; *see also Williams v. Yamaha Motor Co. Ltd.,* 851 F.3d 1015, 1023 (9th Cir. 2017). "Jurisdiction can . . . be imputed based on agency when the [agent] has no independent purpose besides conducting business for the [principal]." *Todd Benjamin Int'l, Ltd. v. Grant Thornton Int'l, Ltd.*, 2023 WL 4457458, at *13 (citing *Hard Candy, LLC*, 106 F. Supp. 3d at 1241). Absent a finding of a "high degree of control, jurisdiction[] will not be imputed, even when the entities have 'a very close

working relationship' and 'regular and extensive contact.'" *Id*. (quoting *Gen. Cigar Holdings, Inc. v. Altadis, S.A*., 205 F. Supp. 2d 1335, 1343–44 (S.D. Fla. 2002), *aff'd* 54 F. App'x. 492 (11th Cir. 2002).

Here, the Plaintiff has not shown that the JD Defendants exerted a "high degree of control" over Walmart.com as to render it their agent. At most, the Plaintiff has shown that the JD Defendants must abide by Walmart's rules and policies, including the requirement to remove listings and marketplace accounts at the request of Walmart.com. [ECF No. 94 ¶ 10]. However, for the Plaintiff's agency theory to work, the JD Defendants, as the principals, must have a high degree control over Walmart.com, as their agent. *Sarmiento Lopez*, 591 F. Supp. 3d at 1238. The JD Defendants have put forth uncontroverted evidence that they lacked control over certain aspects of how their marketplace is listed and displayed on Walmart.com. *See* [ECF No. 53 ¶ 11-12].

The agency inquiry then turns on whether the Plaintiff has shown that the JD Defendants exerted sufficient control over the Third-Party Retailers' Florida contacts, namely their Walmart.com listings and sales into Florida.[8] As to the Third-Party Retailers, the Court finds that the Plaintiff has presented sufficient evidence of control. The Plaintiff argues that the JD Defendants "totally control the use of the Walmart.com Marketplace by [Third-Party Retailers]." [ECF No. 94 ¶ 16]. The Plaintiff's evidence shows that the JD Defendants, through the Chinese language agreements, exerted "operational control" over critical aspects of the Third-Party Retailers' sales and shipments of allegedly infringing goods to Florida consumers. Iris Kwok

---

[8] The JD Defendants challenge the Plaintiff's categorization of their relationship with Third-Party Retailers. The JD Defendants point to the Plaintiff's Response which alleges that the JD Defendants are the agents of the Third-Party Retailers, and argue that, as agents, they cannot have attributed to them the conduct of their principals. [ECF No. 198 at 10]. The JD Defendants are once again urging the Court to weigh form over substance. As the Court has already discussed, it is the actual conduct of the parties that matter for jurisdictional purposes not how those relationship or actions are characterized. The Plaintiff's agency argument as to the Third-Party Retailers clearly focuses on the JD Defendants' control over the Third-Party Retailers. [ECF No. 94 ¶¶ 16-22].

confirmed that the Third-Party Retailers were required to adhere to the JD Defendants' contractual terms in order to have their products listed on the Walmart.com marketplace. [ECF No. 94-47 at 86, 99-100]. The Wang Declaration states that the JD Defendants "each provide[] an online platform that allows [Third-Party Retailers] from China to sell products through Walmart.com." [ECF No. 53 ¶ 10]. In addition, the JD Defendants' virtual storefronts on Walmart.com state that the allegedly infringing goods listed on Walmart.com are "sold and shipped by" the JD Defendants.

In *Fuel Freedom Int'l, LLC v. Maxma, L.C.*, No. 6:06–CV–488–ORL–31DAB, 2006 WL 2734313, at *3–4 (M.D. Fla. Sept. 25, 2006), the court found an agency relationship and noted "most importantly" the fact that the licensee controlled the distributor's marketing efforts by requiring the distributor to obtain prior approval. The court in *Hard Candy* distinguished its case from *Fuel Freedom Int'l* and noted that the defendants in its case had no approval requirement relating to marketing efforts. *See Hard Candy, LLC*, 106 F. Supp. 3d at 1249. Here, the Plaintiff has provided evidence that the agreements between the JD Defendants and the Third-Party Retailers (1) require the Third-Party Retailers to connect their shipping systems to the JD Defendants' platform and only use the logistics services provided or designated by them, and (2) give the JD Defendants the right to restrict or terminate the Third-Party Retailers' business operations on Walmart.com. [ECF No. 94 ¶ 21]. These agreements give the JD Defendants "the right to immediately take the relevant commodities off the shelves, suspend the provision of services to [Third-Party Retailers], temporarily close [Third-Party Retailers'] backend management account, freeze [Third-Party Retailers'] settlement account[s], and terminate the cooperation." *Id.* at ¶ 22. Therefore, the Plaintiff has provided significant evidence that the JD Defendants exerted meaningful control over the means employed by Third-Party Retailers to

market, sell, and ship the allegedly infringing products to Florida consumers. At this juncture, this is sufficient to show that the Third-Party Retailers were the JD Defendants' agents for jurisdictional purposes. *See Sarmiento Lopez*, 591 F. Supp. 3d at 1239.[9]

## II.   Due Process

Even though personal jurisdiction under Florida's long-arm statute is appropriate here, the Plaintiff must still establish sufficient minimum contacts as required by the Due Process Clause.

> In specific personal jurisdiction cases, we apply the three-part due process test, which examines: (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts within the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Dohler*, 2017 WL 4621098, at *5 (citing *Louis Vuitton Malletier*, 736 F.3d at 1355)).

### A.   Plaintiff's Claims and JD Defendants' Contacts with Florida

The relatedness inquiry focuses on "the direct causal relationship between the defendant, the forum, and the litigation." *See Dohler*, 2017 WL 4621098, at *5 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). "This element is meant only to determine relatedness, not sufficiency, and can therefore be met even in the most attenuated manner." *Knepfle v. J-Tech Corp.*, 419 F. Supp. 3d 1281, 1288 (M.D. Fla. 2019) (citation and quotation marks omitted). As to this first prong, the Plaintiff alleges that its claims relate to the JD Defendants' contact with Florida through their Walmart.com marketplace and their sales and shipments of goods to Florida. The evidence presented shows that the JD Defendants' marketplace platform facilitates the sale and shipment of allegedly infringing products to consumers in Florida.

---

[9] Even so, the Court has already found specific personal jurisdiction under Florida's long-arm statute.

Therefore, the Plaintiff has established that its claims arise out of the JD Defendants' contacts with Florida. *CreeLED, Inc.*, 699 F. Supp. 3d at 1362 ("Here, as set forth above, Plaintiff's Complaint adequately alleges that Defendant directed tortious conduct toward Florida by selling infringing products via e-commerce stores and websites."); *Standard Process, Inc. v. Antitrend LLC*, No. 19-CV-99-JDP, 2020 WL 553871, at *3 (W.D. Wis. Feb. 4, 2020) ("The first prong is satisfied because Standard Process alleges that Antitrend engaged in intentional and tortious conduct by selling items through Amazon that infringe Standard Process's trademarks.").

     B.    <u>Purposeful Availment</u>

The Plaintiff has also shown that the JD Defendants purposefully availed themselves of this forum. Purposeful availment requires courts to examine whether the contacts "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Dohler*, 2017 WL 4621098, at *6 (quoting *Louis Vuitton Malletier*, 736 F.3d at 1357). The evidence provided by the Plaintiff shows that the JD Defendants facilitate (1) the listing of the infringing products on their Walmart.com marketplace, and (2) the sale and shipment of infringing goods to Florida. The Wang Declaration concedes that the JD Defendants' marketplace on Walmart.com represents to consumers in Florida that the products are sold and shipped by the JD Defendants. [ECF No. 53 ¶ 11]. While the Wang Declaration states that the JD Defendants are not the entities who actually make the allegedly infringing products or ship them, it does not negate the JD Defendants' role in the sale and shipment of large quantities of infringing goods to Florida consumers. [ECF No. 97-7 at 8-9].

The Wang Declaration also concedes that the JD Defendants establish and maintain the Walmart.com storefronts for Third-Party Retailers. *Id.* ¶ 10 ("Jingdong and JD each provides an online platform that allows third-party sellers from China to sell products through Walmart.com[.]"). "[U]sing intermediaries like [Walmart.com] to sell and ship products has no bearing on the minimum-contacts analysis." *Standard Process, Inc.*, 2020 WL 553871, at *4; *see also Douglas Co., Inc. v. My Brittany's LLC*, No. 19-CV-1234-SM, 2020 WL 2768973, at *4 (D.N.H. May 28, 2020) ("Of course, the fact that Amazon, rather than [the defendant], actually delivers defendants' products is not, standing alone, an impediment to this court's exercise of personal jurisdiction . . . ."); *Marshall Packaging Co., LLC v. Nestle Waters N. Am., Inc.*, No. 6:05CV295, 2006 WL 871015, at *3 (E.D. Tex. Mar. 24, 2006) (finding uncontroverted "factual allegations that [the defendant] indirectly sells or offers to sell" infringing products "in the [forum] through distributors or intermediaries" is sufficient to establish minimum contacts). Rather, courts in this circuit and others have found that "defendants' offers to sell counterfeit [] Products on their Internet stores constitute tortious activity committed in [the forum] sufficient to establish personal jurisdiction over [them]." *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 904 (N.D. Ill. 2015); *see also CreeLED, Inc.*, 699 F. Supp. 3d at 1362; *Factory Direct Wholesale, LLC v. Giantex, Inc.*, No. 1:17-CV-341-WSD, 2018 WL 732570, at *5 (N.D. Ga. Feb. 5, 2018) ("The Court thus finds that in maintaining its Amazon.com storefront, Defendants purposefully availed itself of the laws of Georgia.").[10]

---

[10] The JD Defendants filed a Notice of Supplemental Authority in support of their Motion. [ECF No. 120]. In the filing, they direct the Court to a recent decision rendered by the Northern District of Illinois: *Dan Wang v. The Partnerships and Unincorporated Associations Identified on Schedule A*, Case No. 22 C 3201 (N.D. Ill. Dec. 8, 2023) [ECF 92] where the court granted the JD Defendants' motion to dismiss for lack of personal jurisdiction. However, in that case the court noted that the Plaintiff did not "show that [JD Defendants] engaged in any infringing activity or directed any activity toward Illinois. Rather, he merely argues that [JD Defendants are 'attempt[ing] to avoid liability by pointing the finger to third parties.'" The same is not true here. Moreover, in *Dan Wang* the court underscored that "[a]n example of a purposefully directed activity is a defendant causing its product to be distributed in the forum

19

The Wang declaration does not refute the terms of the "Chinese language agreements" whereby the JD Defendants agree to provide the Third-Party Retailers with "value-added services" regarding the sale and shipment of goods. Further, as discussed earlier, there is evidence that the JD Defendants have facilitated continuous and substantial sales and shipments of allegedly infringing goods into Florida. [ECF No. 97-7 at 8-9]. While the JD Defendants dispute whose sales are covered in the figures produced in this litigation, they concede that those sales "went through" their account at Walmart.com. *Id.* Given the continuous and large quantities of sales and shipments completed through the JD Defendants' online storefronts, the Court finds that the JD Defendants should have reasonably anticipated being haled into court in Florida. *La Potencia, LLC v. Chandler*, No. 22-CV-80417-RAR, 2023 WL 1430480, at *5 (S.D. Fla. Feb. 1, 2023) (finding the defendant's knowing shipment of orders nineteen times to Florida was not random, fortuitous, or attenuated); *CreeLED, Inc.*, 699 F. Supp. 3d at 1362 (finding "[d]efendant directed tortious conduct toward Florida by selling infringing products via e-commerce stores and websites"); *Standard Process, Inc.*, 2020 WL 553871, at *4 (finding the act of setting up online storefront accessible to customers in the forum and enabling shipments of infringing products into the forum are sufficient "to show that a defendant purposefully directed its conduct at that state."). On these facts, the Court finds that the JD Defendants purposefully availed themselves of Florida's market.

C.     Fair Play and Substantial Justice

Finally, the Court considers whether exercising personal jurisdiction over the JD Defendants comports with "fair play and substantial justice." *Sculptchair*, 94 F.3d at 631 (citations omitted). Relevant factors for this determination include "the burden on the defendant, the forum's

---

state[.]" *Id.* (citing *Sun Chenyan v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 2021 WL 1812888, at *5 (N.D. Ill. May 6, 2021). Because the Court finds that the Plaintiff has sufficiently shown that the JD Defendants caused infringing products to be distributed in Florida, the Illinois decision is distinguishable from this case.

interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief[,] and the judicial system's interest in resolving the dispute." *Licciardello*, 544 F.3d at 1288 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). "Where these factors do not militate against otherwise permitted jurisdiction, the Constitution is not offended by its exercise." *Id*.

Here, the JD Defendants offer no viable argument or convincing evidence that the exercise of personal jurisdiction over them would be unduly burdensome. While the burden of travel to Florida is not insignificant for the JD Defendants, "modern methods of transportation and communication reduce this burden significantly." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 259 (11th Cir. 1996) (citation omitted); *see also CreeLED, Inc.*, 699 F. Supp. 3d at 1362 ("Here, Defendant has not articulated the burden placed on it in adjudicating the action in this district, . . . [t]o the extent there is any burden on Defendant beyond that of litigating any matter in a U.S. District Court, that alone is insufficient to offend traditional notions of fair play and substantial justice."). Additionally, the state of Florida has a strong interest in stopping infringing products from being sold to its consumers. *Louis Vuitton Malletier,* 736 F.3d at 1358 ("Florida ha[s] a strong interest in hearing the case and protecting consumers from confusion that results from trademark infringement."). Therefore, the Court finds that the Plaintiff has established that exercising personal jurisdiction over the JD Defendants would comport with traditional notions of fair play and substantial justice.

In sum, the Court concludes that it has specific personal jurisdiction over the JD Defendants pursuant to Florida's long-arm statute and that the exercise of that jurisdiction comports with due process. Accordingly, the JD Defendants' Motion to Dismiss for Lack of Personal Jurisdiction shall be denied.

### III.   Service of Process

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987).  Jingdong argues that it was "unseemly" for it be served by courier on its attorneys. [ECF No. 52 at 3]. "[F]or service to be valid, even when ordered pursuant to Rule 4(f)(3), the United States Supreme Court has stated that service must provide 'notice reasonably calculated, under all the circumstances, to appraise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Fru Veg Mktg., Inc. v. Vegfruitworld Corp.*, 896 F. Supp. 2d 1175, 1182 (S.D. Fla. 2012) (*quoting Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). A defendant may challenge service of process using affidavits, depositions, and oral testimony.

The Plaintiff served Jingdong through counsel. Jingdong does not dispute that it received timely notice of this lawsuit from its counsel. Contrary to what Jingdong argues in its Motion, courts have held that this form of service is proper. *See Fru Veg Mktg.*, 896 F. Supp. 2d at 1182–1183 (collecting cases). Therefore, alternative service was proper here and the Motion is denied on this basis.

### CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that the JD Defendants' Motion to Dismiss Plaintiff's Amended Complaint is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 21st day of November, 2025.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE